JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Sarach C. Cremer
102 Greenbrier Drive
Clarks Summit, PA 18411

**DEFENDANTS**
The Williams Companies, Inc. d/b/a Williams
310 SR 29
Tunkhannock, PA 18657

(b) County of Residence of First Listed Plaintiff: **Lackawanna**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Alexia Kita Blake, Esq., Blake & Walsh, LLC
436 Jefferson Avenue
Scranton, PA 18510 - (570) 342-0505

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 196 Franchise | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment / ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/Accommodations / ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education / ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 2000e et seq. and 43 PS 951 et seq.

Brief description of cause:
Sex Discrimination, Sexual Harassment, and Retaliation

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
DEMAND $ 500,000.00
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____ DOCKET NUMBER _____

DATE: 05/09/2018
SIGNATURE OF ATTORNEY OF RECORD: Alexia Kita Blake, Esq.

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SARAH C. CREMER, | |
| Plaintiff, | |
| v. | No. _____ |
| THE WILLIAMS COMPANIES, INC., d/b/a WILLIAMS, | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

Plaintiff, Sarah C. Cremer ("Plaintiff"), by and through her undersigned counsel, hereby files this complaint against Defendant, The Williams Companies, Inc., doing business as Williams ("Defendant"), for sex discrimination, sexual harassment, and retaliation in violation of Title VII of the Civil Right Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA"), and alleges as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), (c), and (d) because, *inter alia*, a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

3. Plaintiff has satisfied all administrative prerequisites to suit by timely filing a charge of discrimination against Defendant with the Pennsylvania Human Relations Commission ("PHRC") and Equal Employment Opportunity Commission ("EEOC") on or about April 11, 2016, in which she alleged sex discrimination, sexual harassment, and retaliation under Title VII and the PHRA, and by timely filing this action within ninety (90) days of her receipt of the EEOC Notice of Right to Sue dated February 14, 2018.

4. Plaintiff has satisfied all conditions precedent to the institution of this action.

**Parties**

5. Plaintiff, Sarah C. Cremer, is a competent female adult individual who resides at 102 Greenbrier Drive, Clarks Green, Pennsylvania 18411.

6. Defendant, The Williams Companies, Inc., d/b/a Williams, is a corporation organized under the laws of the State of Delaware, with its corporate headquarters located in Tulsa, Oklahoma and at all relevant times, an office located at 310 SR 29, Tunkhannock, Pennsylvania 18657, where Plaintiff worked. Upon information and belief, Defendant has over 5,000 employees.

7. Defendant regularly, continuously, and systematically conducts business in Pennsylvania.

## Underlying Facts

8. Defendant is an energy infrastructure company which owns and operates midstream gathering and processing assets and interstate natural gas pipelines in the United States and Canada. Defendant is engaged, inter alia, in the production, gathering, processing, and transportation of natural gas in the Marcellus shale-gas supply region in northeastern Pennsylvania.

9. Plaintiff was employed by Defendant from November 7, 2011 until she was illegally terminated on February 17, 2016. Plaintiff's position at the time of her termination was Northeast Gathering and Processing Supervisor of Land.

10. Plaintiff worked in Defendant's Northeast Gathering and Processing Region for Engineering and Construction in the local operating area office located in Tunkhannock, Pennsylvania.

11. At all times relevant hereto, Plaintiff's direct supervisor was Charles Holmes ("Holmes"), Defendant's Manager of Land.

12. Shortly after Plaintiff was hired and continuing on an ongoing basis throughout her employment, Holmes subjected her to a long-running campaign of sexual harassment and sex-based discrimination.

13. Holmes' unlawful conduct includes, but is not limited to, the following overtly sexual comments and conduct:

     (a)     Spreading a malicious and untrue rumor to other employees of Defendant that Plaintiff had had an affair with her client manager at a prior place of employment where Holmes had also worked;

     (b)     Describing the details of his sex life with his wife to Plaintiff and telling her that he is "a sex addict" during a six-hour car ride together shortly after Plaintiff began working for Defendant;

     (c)     Inviting Plaintiff to his hotel room on at least two occasions during her employment;

     (d)     Repeatedly questioning Plaintiff about her personal/sex life, looks, and appeal, including asking her whom she was dating and offering unsolicited advice about whom she should date;

     (e)     Repeatedly discussing and/or questioning Plaintiff about the personal life/dating/sex life of other female employees of Defendant, including females who reported to Plaintiff;

     (f)     Repeatedly discussing with Plaintiff and/or questioning her about the clothes and shoes that various female employees wore, and sending pictures of female employees' clothes/shoes to Plaintiff on her cell phone;

     (g)     Constantly texting her throughout the day about personal matters as opposed to business matters;

(h) Requesting Plaintiff to take photographs of female temporary employees and to send them to him; and

(i) Presenting Plaintiff at a holiday party with a GQ Magazine cover on which Plaintiff's male subordinates' faces were photo-shopped, referring to them as "Sarah's men" and stating there would be a vote for best model.

14. As one of the few female supervisors in a predominantly male environment in an overwhelmingly male-dominated industry, Plaintiff tried to ignore and tolerate Holmes' inappropriate and graphic comments and questions about her and other female employees' personal, dating, and sex life.

15. Plaintiff is aware of similar misconduct by Holmes toward other female employees who reported to Holmes and who are no longer employed by Defendant.

16. In or about February or March 2015, Plaintiff told Holmes about inappropriate, offensive, and harassing statements made by a senior management employee, Kevin Marion ("Marion"), to the effect that women should not do land work (as does Plaintiff) because they are too emotional when they have their period and can't make good decisions.

17. Holmes discouraged Plaintiff from reporting Marion's inappropriate and offensive statement because it would create problems for her and for Holmes' department and told Plaintiff that her ability to tolerate working with men in the

5

industry and the "good old boy" mentality had served her well in terms of her career advancement.

18. Plaintiff did not report Marion's inappropriate and offensive statement for fear of retaliation.

19. Holmes did not take any action to address Plaintiff's report about Marion and by his inaction, Holmes condoned the existence of a hostile work environment for Plaintiff.

20. In or about August or September 2015, Plaintiff discussed aspects of Holmes' inappropriate and harassing and discriminatory behavior with Clayton Roesler ("Roesler"), Defendant's then-Director of Land and Permitting and Holmes' supervisor.

21. Upon information and belief, Roesler spoke with Holmes about his misconduct.

22. Roesler was also aware of Plaintiff's complaint about the inappropriate, offensive, and harassing comment by Marion. Roesler took no action relative to Plaintiff's complaint, thereby also condoning the existence of a hostile work environment for Plaintiff.

23. Following her reports of Holmes' harassment and discriminatory conduct to Defendant in late Summer 2015, Plaintiff experienced various acts of

retaliation by Holmes and Defendant, all of which were a direct result of Plaintiff's reports of Holmes' harassment and discrimination.

24. In direct response to Plaintiff's complaint to Roelser about Holmes' harassment and discrimination, Holmes' attitude and demeanor toward Plaintiff drastically changed and he continually acted in a mean, hostile, derisive, intimidating, and vindictive manner toward Plaintiff, arguing with her, challenging her decisions, and undermining her authority at every turn, often in the presence of upper management and/or Plaintiff's subordinates.

25. In October 2015, Holmes ordered Plaintiff to lower the performance review ratings for two of her subordinates, even though Plaintiff disagreed with the lower ratings. Holmes provided no explanation for the change and allowed no discussion about it. Plaintiff viewed Holmes' action as further evidence of his attempts to undermine her authority and as retaliation for her complaints about him.

26. In November 2015, Defendant eliminated the position of one of Plaintiff's subordinates. Plaintiff disagreed with the decision and viewed it as further retaliation against her, as there appeared to be no legitimate business reason for the decision as there was a significant amount of work in the terminated employee's area and Plaintiff was forced to rely on outside contractors and her own extra hours to backfill the opening.

27. At all times relevant hereto, Plaintiff performed her job duties in an exemplary manner, and she was well respected by her managers, peers, and subordinates.

28. Plaintiff received stellar annual performance reviews until she complained about Holmes' sexual harassment and discrimination.

29. In December 2015, Holmes completed Plaintiff's 2015 performance review, in which he gave her the second lowest rating possible. Holmes' review of Plaintiff's employment and his comments therein were unwarranted, untrue, and unjustified and constitute further retaliation against Plaintiff for her complaints about Holmes.

30. Plaintiff responded in late December 2015 by providing a detailed and comprehensive factual written response to Roesler and to Defendant's Human Resources personnel, in which she outlined her accomplishments and achieved goals.

31. In early January 2016, Plaintiff learned that Holmes had commenced an investigation into her alleged relationship with a former employee.

32. Inasmuch as Defendant's policies do not address, let alone prohibit, fraternization between employees or between a supervisor and employee, and in light of the fact that any investigation into alleged employee misconduct is within

the purview of the human resources department, Plaintiff viewed Holmes' investigation as another act of retaliation.

33. Under the guise of his purported investigation, on or about January 7, 2016, Holmes made several telephone calls to and met with the male employees who reported to Plaintiff and openly discussed her sex life with them, asking them what they knew about her sex life.

34. At the January meeting with Plaintiff's male subordinates, Holmes also coached them about how to respond to the investigator's questions about Plaintiff.

35. Holmes also continued to call each of Plaintiff's male subordinates to discuss Plaintiff's alleged personal relationship with a former employee.

36. On or about January 14, 2016, Plaintiff met with Roesler and reported her belief that Holmes instigated the investigation into her alleged relationship with a former employee in retaliation against her for exposing his harassing and discriminatory behavior.

37. Plaintiff also told Roesler at that time that she believed that she did nothing wrong and had not violated any company policies with regard to the alleged relationship with a former employee.

38. Plaintiff also told Roesler at that time that Holmes' had met with her male subordinates and that he had discussed her sex life with them, which she told Roesler was extremely inappropriate and offensive.

39. Plaintiff also told Roesler at that time that Holmes had coached her male subordinates on how to respond to the investigator's questions about her.

40. Plaintiff told Roesler at that time that she believed that she was a victim of sexual harassment, sexual discrimination, and retaliation by Holmes.

41. Plaintiff also told Roesler at that time that Holmes had been mean, hostile, and vindictive toward her since she told Roesler about his harassing and discriminatory behavior, and that she was afraid of what Holmes would do next.

42. At her meeting with Roesler, Plaintiff requested that she no longer report to Holmes.

43. Plaintiff also called Roesler after this meeting to report continuing phone calls from Holmes to her subordinates.

44. On or about January 25, 2016, Plaintiff discussed Holmes' harassment and discriminatory conduct throughout her employment with Cheri Decker, Defendant's corporate human resources officer ("Decker"), and Erica Szakelyhidi, Defendant's HR Business Partner ("Szakelyhidi").

45. Plaintiff provided additional details to Decker about Holmes' discrimination and harassment in a subsequent telephone conversation with Decker on or about February 3, 2016, during which Decker assured Plaintiff that her allegations would be investigated fully.

46. On February 7, 2016, Plaintiff sent an e-mail message to Decker in which she stated in relevant part as follows:

> I just wanted to send a note to follow up on our conversation last week, during which I told you about my manager's pattern of sexual harassment and gender discrimination beginning soon after I was hired. As I explained, his behavior has become increasingly more offensive over the past six months culminating in the inappropriate meeting with my employees last month. This behavior has created a hostile, offensive and intimidating work environment which I believe is based on my gender.
>
> I have asked not to report to him directly, and I understand that this many not change immediately, but ultimately I do not want the intimidation and discrimination to affect my work performance. I have excelled in my role as Supervisor and my only wish in all of this, is to simply continue to excel as an employee in a healthy and positive environment. . . .

47. Plaintiff received no acknowledgement of her complaint from Decker or any other agent of Defendant.

48. Defendant did not investigate her complaints of harassment and discrimination.

49. On February 17, 2016, ten days after she filed her formal written complaint about Holmes in follow-up to several discussions about his harassment and discrimination with Roesler, Decker, and Szakelyhidi, Plaintiff was terminated.

50. Notwithstanding Plaintiff's complaints regarding Holmes' sexual harassment, discrimination, and retaliation, Defendant never took any reasonable or meaningful steps to either discipline Holmes or shield Plaintiff from his harassment and from any retaliation.

51. In terminating Plaintiff's employment, Defendant was motivated by Plaintiff's sex and by its desire to retaliate against her for reporting Holmes' sexual harassment and discrimination to Defendant.

52. As a result of Defendant terminating Plaintiff, she has suffered substantial injuries to her livelihood, including loss of wages and benefits, as well as to her reputation, emotional pain and suffering, mental anguish, humiliation, and other nonpecuniary losses.

53. Defendant discriminated against Plaintiff based on her sex in violation of Title VII and the PHRA by subjecting her to a hostile work environment that was motivated by her sex.

54. Defendant discriminated against Plaintiff based on her sex in violation of Title VII and the PHRA by terminating her employment based on her sex.

55. Defendant engaged in unlawful retaliation against Plaintiff in violation of Title VII and the PHRA by terminating her employment as a direct result of her complaints about her supervisor's sexual harassment and retaliation.

56. Plaintiff demands a trial by jury on all claims.

## Count I

### Sex Discrimination in Violation of
### Title VII of the Civil Rights Act of 1964
### 42 U.S.C. §§ 2000e et seq.

57. Plaintiff incorporates each of the foregoing paragraphs by reference as if the same were fully set forth at length herein.

58. Title VII prohibits employers from discriminating against employees based on sex and from subjecting employees to a hostile work environment based on sex.

59. Holmes' sexual harassment of Plaintiff was unwelcome.

60. Holmes' sexual harassment of Plaintiff was based on Plaintiff's sex and, but for Plaintiff's sex, she would not have been subjected to such conduct.

61. Holmes' sexual harassment of Plaintiff was severe, pervasive, and regular.

62. Holmes' sexual harassment of Plaintiff detrimentally affected Plaintiff by, inter alia, causing her extreme emotional distress, stress, and anxiety.

63. Holmes' continuing pattern of unwelcome, lewd, and offensive conduct directed at Plaintiff throughout her employment created an intimidating and hostile working environment.

64. Holmes' misconduct would detrimentally affect any reasonable female employee.

65. Notwithstanding Plaintiff's complaints regarding Holmes' sexual harassment, discrimination, and retaliation, Defendant never took any reasonable or meaningful steps to either discipline Holmes or shield Plaintiff from his harassment and from any retaliation.

66. Defendant violated Title VII by subjecting Plaintiff to a gender-based hostile work environment.

67. Defendant violated Title VII by terminating Plaintiff because of her sex.

68. Defendant's unlawful actions were intentional and were committed with malice or reckless indifference for Plaintiff's statutorily protected rights.

69. The effect of Defendant's unlawful actions has been to deprive Plaintiff of equal employment opportunities and to otherwise adversely affect her employment status because of her sex.

70. As a direct result of Defendant's unlawful and intentional conduct, Plaintiff has suffered serious economic losses, loss of enjoyment of life, anger, humiliation, and emotional pain and suffering.

WHEREFORE, Plaintiff hereby requests that judgment be entered in her favor and against Defendant for back pay, front pay, reinstatement, compensatory damages, punitive damages, interest, and attorney's fees and costs, and such other and further relief as is deemed appropriate.

## Count II

## Retaliation in Violation of
## Title VII of the Civil Rights Act of 1964
## 42 U.S.C. §§ 2000e et seq.

71. Plaintiff incorporates each of the foregoing paragraphs by reference as if the same were fully set forth at length herein.

72. Title VII prohibits employers from retaliating against employees for complaining about workplace sexual harassment and discrimination.

73. Defendant violated Title VII by subjecting Plaintiff to various acts of retaliation, as set forth herein, up to and including her termination of employment, in response to Plaintiff's complaints about Holmes' sexual harassment and discrimination.

74. Defendant's unlawful actions were intentional and were committed with malice or reckless indifference for Plaintiff's statutorily protected rights.

75. The effect of Defendant's unlawful actions has been to deprive Plaintiff of equal employment opportunities and to otherwise adversely affect her employment status because of her sex.

76. As a direct result of Defendant's unlawful and intentional conduct, Plaintiff has suffered serious economic losses, loss of enjoyment of life, anger, humiliation, and emotional pain and suffering.

WHEREFORE, Plaintiff hereby requests that judgment be entered in her favor and against Defendant for back pay, front pay, reinstatement, compensatory damages, punitive damages, interest, and attorney's fees and costs, and such other and further relief as is deemed appropriate.

## Count III

### Sex Discrimination in Violation of the Pennsylvania Human Relations Act 43 P.S. §§ 951 et seq.

77. Plaintiff incorporates each of the foregoing paragraphs by reference as if the same were fully set forth at length herein.

78. The PHRA prohibits employers from discriminating against employees based on sex and from subjecting employees to a hostile work environment based on sex.

79. Holmes' sexual harassment of Plaintiff was unwelcome.

80. Holmes' sexual harassment of Plaintiff was based on Plaintiff's sex and, but for Plaintiff's sex, she would not have been subjected to such conduct.

81. Holmes' sexual harassment of Plaintiff was severe, pervasive, and regular.

82. Holmes' sexual harassment of Plaintiff detrimentally affected Plaintiff by, inter alia, causing her extreme emotional distress, stress, and anxiety.

83. Holmes' continuing pattern of unwelcome, lewd, and offensive conduct directed at Plaintiff throughout her employment created an intimidating and hostile working environment.

84. Holmes' misconduct would detrimentally affect any reasonable female employee.

85. Notwithstanding Plaintiff's complaints regarding Holmes' sexual harassment, discrimination, and retaliation, Defendant never took any reasonable or meaningful steps to either discipline Holmes or shield Plaintiff from his harassment and from any retaliation.

86. Defendant violated the PHRA by subjecting Plaintiff to a gender-based hostile work environment.

87. Defendant violated the PHRA by terminating Plaintiff because of her sex.

88. Defendant's unlawful actions were intentional.

89. The effect of Defendant's unlawful actions has been to deprive Plaintiff of equal employment opportunities and to otherwise adversely affect her employment status because of her sex.

90. As a direct result of Defendant's unlawful and intentional conduct, Plaintiff has suffered serious economic losses, loss of enjoyment of life, anger, humiliation, and emotional pain and suffering.

WHEREFORE, Plaintiff hereby requests that judgment be entered in her favor and against Defendant for back pay, front pay, reinstatement, compensatory damages, interest, and attorney's fees and costs, and such other and further relief as is deemed appropriate.

## Count IV

### Retaliation in Violation of the Pennsylvania Human Relations Act 43 P.S. §§ 951 et seq.

91. Plaintiff incorporates each of the foregoing paragraphs by reference as if the same were fully set forth at length herein.

92. The PHRA prohibits employers from retaliating against employees who complain of workplace sexual harassment and discrimination.

93. Defendant violated the PHRA by subjecting Plaintiff to various acts of retaliation, as set forth herein, up to and including her termination of employment, in response to Plaintiff's complaints about Holmes' sexual harassment and discrimination.

94. Defendant's unlawful actions were intentional.

95. The effect of Defendant's unlawful actions has been to deprive Plaintiff of equal employment opportunities and to otherwise adversely affect her employment status because of her sex.

96. As a direct result of Defendant's unlawful and intentional conduct, Plaintiff has suffered serious economic losses, loss of enjoyment of life, anger, humiliation, and emotional pain and suffering.

WHEREFORE, Plaintiff hereby requests that judgment be entered in her favor and against Defendant for back pay, front pay, reinstatement, compensatory damages, interest, and attorney's fees and costs, and such other and further relief as is deemed appropriate.

### Demand for Jury Trial

Plaintiff demands a trial by jury on all claims set forth in this Complaint on which she is entitled to a jury trial.

s/ Alexia Kita Blake
Alexia Kita Blake, Esquire
Attorney I.D. No. 53094
**BLAKE & WALSH, LLC**
436 Jefferson Avenue
Scranton, PA  18510
(570) 342-0505 (Phone)
(570) 342-0999 (Fax)
akblake@BlakeWalshLaw.com

Attorney for Plaintiff,
Sarah C. Cremer

Dated:  May 9, 2018